UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JENNIFER STOUT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:14-CV-563-TAV-CCS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the Court on Plaintiff's Motion for Summary and Memorandum in Support [Doc. 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Jennifer Stout seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On May 23, 2011, plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began September 25, 2004 [Tr. 196-97]. After her application was denied initially and upon reconsideration, plaintiff requested a hearing [Tr. 108-14]. On June 4, 2013, a hearing was held before an ALJ to review determination of plaintiff's claim [Tr. 34-102]. On August 6, 2013, the ALJ found that plaintiff was not disabled [Tr. 15-33]. The Appeals Council denied plaintiff's request for review [Tr. 4-9]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, plaintiff filed a complaint with this Court on December 3, 2014, seeking judicial review of the Commissioner's final decision under

Section 205(g) of the Social Security Act [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirement of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 25, 2004 through her date last insured of December 31, 2009 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative lumbar disc disease and spondylolisthesis (s/p L4-S1 fusion) and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could frequently climb ramps or stairs, but only occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds.

6. Through the date last insured, the claimant was capable of performing her past relevant work as a security officer, cocktail server, and restaurant manager (as those jobs are generally performed). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 25, 2004, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(f)).

2

[Tr. 20-29].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB.  An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled.  42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.    If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.    If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.    If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

3

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

4

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983) (citations omitted). Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

5

On review, plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   MEDICAL EVIDENCE

On September 25, 2004, plaintiff injured her lower back while lifting a box of chicken at work [Tr. 305]. Plaintiff presented to Bienville Orthopaedic Specialists, LLC four days later for back pain [*Id.*]. Plaintiff was treated by Jon Schultz, M.D., who diagnosed plaintiff with a herniated lumbar disk [Tr. 306]. Dr. Schultz treated plaintiff with anti-inflammatory and muscle relaxant medication in conjunction with physical therapy [Tr. 306]. On November 23, 2004, Dr. Schultz noted that an MRI of plaintiff's lumbar spine showed "degenerative disk disease at L4-5 and more severe at L5-S1 with a Grade 1 spondylolisthesis of L5 on S1," as well as nerve root impingement [Tr. 300]. Plaintiff reported that she was doing fairly well overall, but experienced good days and bad days [*Id.*]. Upon examination, plaintiff was negative for straight leg raises, had normal extensor hallucis longus strength, and full range of motion but with complaints of pain with back flexion [*Id.*]. Dr. Schultz assessed that plaintiff could return to work within three weeks without restrictions, but recommended that she continue physical therapy [*Id.*].

At the request of Dr. Schultz, plaintiff was consultatively examined by Charles Winters, M.D., another orthopedic physician within the same practice, on January 4, 2005 [Tr. 297]. Plaintiff complained that she was often in pain and the majority of the time she was aching [Tr. 297]. She related that her back kept her from sitting for long periods of time and that she could only tolerate walking short distances [*Id.*]. Plaintiff described her pain as radiating down her hips and into her legs and that physical therapy, as well as her prescribed medication, offered little relief [*Id.*]. Dr. Winters found that plaintiff had decreased range of motion in her lumbar

6

spine and experienced pain with extension and twisting, but demonstrated normal neurologic results, was negative for straight leg raises, and had normal gait, motor strength, and range of motion in her legs [Tr. 298]. Dr. Winters opined that plaintiff did not require surgery but could possibly benefit from an epidural steroid injection for pain management [Tr. 299]. Following her first epidural shot, plaintiff returned on May 18, 2005, and reported that her pain had subsided for only a couple days [Tr. 294]. Plaintiff received a second epidural shot [Tr. 295] and reported significant improvement the following month, although she still complained of constant back pain [Tr. 291]. Dr. Winters recommended a lumbosacral corset to help with her back pain [Tr. 292].

Plaintiff relocated from Mississippi to Ohio soon thereafter and began seeing Lawrence Zeff, M.D., on July 28, 2005 [Tr. 548]. Plaintiff reported severe back pain when she sat, stood, or walked, and that lying down offered some relief [*Id.*]. She explained that her epidural shots and physical therapy did not really help [*Id.*]. Upon examination, plaintiff could flex her lumbar spine about 90 degrees, extend 20 degrees, and laterally bend 20 degrees [*Id.*]. Straight leg raises caused back pain, but she demonstrated normal muscle strength, pinprick sensation, gait, and could walk on her heels and toes [*Id.*]. Dr. Zeff recommended diagnostic and therapeutic facet joint injections, Lidoderm patches, and physical therapy [Tr. 549]. Plaintiff reported no relief with the injection and underwent a second MRI of the lumbar spine [Tr. 547]. The imaging results demonstrated grade 1 spondylolisthesis and some foraminal stenosis at L5-S1 [Tr. 546]. After no reported success with selective epidural steroid injections and facet joint block [Tr. 543-45], plaintiff was referred to John Jacquemin, M.D., to determine if plaintiff was a surgical candidate [Tr. 542].

7

Plaintiff met with Dr. Jacquemin for the first time on June 25, 2007 [Tr. 541]. Dr. Jacquemin noted that plaintiff had an ongoing worker's compensation claim due to her workplace back injury [*Id.*]. Dr. Jacquemin found that plaintiff's gait was normal, she had full sensation and motor function throughout, she was negative for straight leg raises, although complained of pain with flexion and extension, and she had full range of motion in her hips, knees and ankles with no complaints of pain [*Id.*]. After examining plaintiff and reviewing her MRI results, Dr. Jacquemin diagnosed plaintiff with L5-S1 spondylolisthesis and neural foraminal stenosis as well as L4/5 degenerative disc disease [*Id.*]. Although surgical treatment was discussed, Dr. Jacquemin recommended that plaintiff continue with conservative measures and undergo a discogram to determine if the L4/5 generated plaintiff's pain [*Id.*]. The discogram, however, proved positive at L4/5 for back and right leg pain [Tr. 539]. On December 3, 2007, Dr. Jacquemin discussed surgical options again, noting that plaintiff continued to complain of pain but was not taking a lot of her pain medication [*Id.*]. During subsequent appointments, examination results were largely unchanged except that plaintiff had some decrease in sensation in her right foot and was positive for straight leg raises, mainly in her right leg, which produced back and hip pain [Tr. 537-38]. On March 17, 2008, plaintiff agreed to undergo anterior posterior fusion in her L4 through S1 [Tr. 537], and Dr. Jacquemin performed the surgery on April 1, 2008 [Tr. 317-19].

Plaintiff returned to Dr. Jacquemin two weeks post-operative [Tr. 536]. Dr. Jacquemin noted plaintiff was doing very well and her back pain was rated a two and her leg pain a zero or one on a scale of one to 10, with 10 being the worst pain [*Id.*]. During her follow-up appointment four weeks later, plaintiff reported some pain and numbness in her left leg but was doing very well overall [Tr. 534]. On June 2, 2008, Dr. Jacquemin noted that plaintiff continued

8

to do well and he recommended that she begin physical therapy [Tr. 533]. During subsequent appointments, plaintiff reported she had good days and bad days but felt as though she was making progress [Tr. 530-32]. Plaintiff's gait was normal, she had full motor function throughout, her sensation and neurovascularly were intact, she had full range of motion throughout, and she was negative for straight leg raises except for complaints of back pain [Tr. 528- 532]. On March 2, 2009, Dr. Jacquemin referred plaintiff to NovaCare for a physical work performance evaluation [Tr. 527].

An evaluation was completed by NovaCare on March 16, 2009, and a recommendation of work in the light range was assessed [Tr. 551]. Specifically, the evaluation found that plaintiff had the following limitations: she could lift 15-20 pounds occasionally, and up to 10 pounds frequently; she could push and pull 30 pounds occasionally; she could sit frequently and stand occasionally to frequently; and she could occasionally stoop, squat, and climb and frequently walk and reach [Tr. 551, 553]. Dr. Jacquemin adopted the evaluation's findings and on March 23, 2009, opined that plaintiff could perform work that fell into the light range and that said restrictions were permanent [Tr. 526]. At this time, plaintiff reported she was currently job hunting [Id.].

On May 4, 2009, plaintiff met with Dr. Jacquemin for the last time [Tr. 525]. Plaintiff reported she was doing okay and experienced some pain in her back and that the pain occasionally radiated down into her leg [Id.]. Upon examination, plaintiff's gait was normal, she had 5/5 motor function throughout, her sensation was intact throughout, and her hip, knee, and ankle had full range of motion without complaints of pain [Id.]. Plaintiff was negative for straight leg raises but complained of back pain and some discomfort with flexion and extension [Id.]. Dr. Jacquemin found that plaintiff was at maximal medical improvement and noted that

9

plaintiff was looking for work with said restrictions [*Id.*]. Dr. Jacquemin also noted that plaintiff may require periodic pain and/or anti-inflammatory medication [*Id.*]. There was no indication that future surgery would be needed, but Dr. Jacquemin did not rule out the possibility that at some point in plaintiff's life she may need further back surgery, which may include a laminectomy or a fusion type procedure [*Id.*].

The following month, on June 24, 2009, plaintiff established pain management care with Hungchih Lee, M.D. [Tr. 394-98]. Plaintiff reported her back pain as a seven and lower extremity pain as a six on a scale of one to 10 [Tr. 394]. She claimed she could only sit, lift, and walk for 15 minutes at a time and that stairs or prolonged standing increased her back and leg pain [*Id.*]. Plaintiff's lumbar spine and pelvis experienced moderate tenderness to touch, but her gait, muscle strength, and neurological sensory were all within normal limits [Tr. 396-98]. Dr. Lee assessed post-surgical pain, lumbar disc displacement, and sacroiliac joint pain [Tr. 398].

In August 2009, plaintiff received a steroid injection, which reduced her pain by 70% in her lower back and reduced her pain by 100% in her right lower extremity [Tr. 392]. However, plaintiff reported that the relief lasted for only seven days before her pain gradually increased, although it remained tolerable unless her activity level increased [Tr. 386]. Plaintiff returned the following month and reported that her pain symptoms were stable and unchanged, she experienced good results and no adverse side effects with medication, and her pain was more tolerable and daily functions had improved [*Id.*]. But plaintiff experienced stiffness in the morning and had to "stop from time to time" while performing housework [*Id.*]. Upon examination, she had mild tenderness of the lumbar spine and moderate pain around her pelvis [Tr. 391]. Her muscle tone was 5/5 and her sensory was fully intact [*Id.*]. Later that same

10

month, plaintiff reported her pain had intensified and interfered with her sleep, causing her to double her pain medication dosage [Tr. 366].

By October 29, 2009, plaintiff's chief complaint was pain radiating down her right leg and stiffness in her lower back [Tr. 370]. She reported that Vicodin took the edge off her pain but sometimes she has to double her medication [*Id.*]. Examination findings remained the same. [*Id.*]. In November 2009, plaintiff reported the Vicodin helped significantly and her physical therapy was also helping her range of motion [Tr. 374]. While she reported experiencing severe pain for a few days, Dr. Lee noted that plaintiff had run out of pain medication and did not return for a follow-up during the holidays [*Id.*]. On December 24, 2015, a week before plaintiff's last date insured, plaintiff reported her medication made her pain tolerable and while her activities were not limited, activities aggravated her pain [Tr. 378]. However, her medication reduced her pain symptoms by 50% and she experienced no adverse side effects [*Id.*]. Dr. Lee recommended that plaintiff continue to exercise daily [*Id.*].

On May 17, 2012, Dr. Lee completed a "Listing Questionnaire" and a "Social Security Disability Questionnaire," both of which indicated that plaintiff suffered from lumbar disc displacement with radiating pain [Tr. 416, 417]. In regard to the Listing Questionnaire, Dr. Lee opined that plaintiff experienced limited range of motion in her spine, motor loss, and sensory loss due to decrees pinprick sensation at the right thigh [Tr. 416]. Dr. Lee noted that although plaintiff was negative for straight leg raises, it caused her lower back pain [*Id.*]. As to the second questionnaire, Dr. Lee opined that during an average day, plaintiff would need to lie down several times throughout the day, she could sit for two to four hours and stand or walk for one to two hours, and she could occasionally lift or carry up to five pounds [Tr. 417-18]. Dr. Lee also opined that plaintiff's pain caused insomnia and inactivity, which in turn caused weight gain,

11

fatigue, and difficulty focusing and concentrating [Tr. 418-19]. Finally, Dr. Lee noted that plaintiff needed to avoid driving after taking pain medication [Tr. 419].

Dr. Lee provided a follow-up letter a year later on April 23, 2013 [Tr. 555-56]. Dr. Lee discussed an August 2009 MRI that was obtained through plaintiff's worker's compensation claim [Tr. 555]. The MRI revealed "significant residual problems at both L4-5 and L5-S1, with spondylolisthesis at L5-S1 causing biforaminal stenosis, right greater than left" [*Id.*]. According to Dr. Lee, plaintiff's imagining results substantiated her subjective complaints of pain [*Id.*]. Dr. Lee explained that additional treatment options were recommended but were not pursued due to plaintiff's worker's compensation carrier denying authorization; therefore, treatment had been limited to medication management and some acupuncture sessions [*Id.*]. In Dr. Lee's opinion, plaintiff's pain created significant functional limitations, including the inability to perform even a sit down job as plaintiff would need to lie down "quite a bit" during a regular workday due to her pain and sedating side effects of her medication [Tr. 556]. Dr. Lee also commented on plaintiff's reported 100 pound weight gain following her back injury, concluding that "this does not surprise me at all because her functional capabilities have been so reduced, which obviously lends itself to weight gain which in turn further exacerbates the back problems" [*Id.*].

Finally, a "Physical Residual Functional Capacity Assessment" was completed by a non-examining, state agency physician on November 25, 2011 [Tr. 136-37]. Therein, the state agency physician opined that plaintiff's spinal fusion created exertional limitations, including the ability to lift or carry 20 pounds occasionally and 10 pounds frequently, but unlimited ability to push or pull within the foregoing weight restrictions, and the ability to sit, stand, or walk for six hours in an eight-hour workday [Tr. 136]. In addition, the state agency physician opined that plaintiff's reduced range of motion in her spine, in conjunction with her normal muscle strength,

produced some postural limitations, including the ability to occasionally climb ladders, stoop, kneel, and crouch and frequently climb ramps or stairs, but unlimited ability to balance [*Id.*].

## V.     POSITIONS OF THE PARTIES

Plaintiff raises three allegations of error on appeal. First, plaintiff argues that the ALJ failed to properly assess the physical limitations caused by her obesity[1] [Doc. 16 at 6-7]. Second, plaintiff contends that the ALJ failed to properly weigh the treating physician opinions of record [*Id.* at 8-15]. Last, plaintiff maintains that the disability determination is not supported by substantial evidence because the ALJ failed to consider the evidence as a whole and instead cherry-picked the record in an effort to support her conclusions [*Id.* at 16-19].

The Commissioner responds that the ALJ properly addressed plaintiff's obesity and cited to medical records that contradicted plaintiff's allegation in this regard [Doc. 19 p. 7]. In addition, the Commissioner argues that the ALJ properly applied the treating physician rule to the treating opinions of records [*Id.* at 11-13]. Finally, as to the ALJ discussing only selective evidence, the Commissioner contends that the ALJ fairly and properly identified inconsistencies in the record that detracted from plaintiff's credibility [*Id.* at 7-11].

Plaintiff filed a reply [Doc. 20], asserting that the Commissioner failed to fully respond to all of the allegations plaintiff raised in regard to the ALJ's application of the treating physician rule and the ALJ's misrepresentation of the evidence.

## VI.     ANALYSIS

The Court will address plaintiff's allegations of error in turn.

---

[1] In her brief, while plaintiff does not list this issue as a specific assignment of error, she does make some legal arguments on the issue in her recitation of the medical evidence she alleges supports her claim that she meets or equals Listing 1.04 [Doc. 16 at 6-7]. Therefore, the Court will address the matter as a separate issue.

## A.     Obesity

Plaintiff argues the ALJ, who assessed obesity as a severe impairment, failed to provide any meaningful discussion of the impairment's effects at steps three and four of the sequential evaluation in accordance with Social Security Ruling ("SSR") 02-1p [Doc. 16 pp. 6-7].   The Commissioner responds that the ALJ properly discussed medical records that contradicted plaintiff's allegation that she had gained a substantial amount of weight following her back injury [Doc. 19 p. 7].

Although there is no "listed impairment" for obesity, SSR 02-1p instructs adjudicators to take into consideration the effects obesity may have on a disability claimant:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.   Individuals with obesity may have problems with the ability to sustain a function over time  .  .  .  . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting ona [sic] regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

2002 WL 34686281, at *6 (Sept. 12, 2002).

In regard to step three of the sequential evaluation, an ALJ may "find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." *Id.* at *5.   Additionally, obesity by itself may be "medically equivalent to a listed impairment." *Id.*   At step four, adjudicators are instructed to consider the effects of obesity in singularity and in combination with other impairments to determine whether the condition may diminish a claimant's work capacity.   *Id.* at *6.   "As with any other impairment, [the ALJ] will explain how [she] reached [her] conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7.   The ruling cautions, however, that assumptions will not be made "about the severity or

14

functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* at *6. Thus, obesity is evaluated "based on the information in the case record." *Id.*

Moreover, while obesity is a condition that must be taken under consideration, the Court of Appeals for the Sixth Circuit has explicitly recognized that there is no particular procedure for addressing a claimant's obesity. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006) (holding that "[i]t is a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese disability claimants").

Here, at step three, the ALJ briefly discussed SSR 02-1p in consideration of "the effect obesity has in contributing to or exacerbating the claimant's other impairments" [Tr. 23]. The ALJ found that plaintiff's "[o]bseity does not raise [her other impairments] to listing-level severity but, as a medially determinable impairment, any functional limitations resulting from the obesity have been fully considered in arriving at the claimant's residual functional capacity" [*Id.*]. At step four, the ALJ gave a lengthier discussion regarding plaintiff's obesity and its effects on her RFC. Specifically, the ALJ noted that plaintiff alleged significant weight gain as the result of her back injury and recited Dr. Lee's comment that he was not surprised by the weight gain because plaintiff's "functional capabilities have been so reduced, which obviously lends itself to weight gain" [*Id.* (quoting Tr. 566)]. The ALJ, however, rejected Dr. Lee's characterization of plaintiff's weight and its effect, finding that the medical evidence demonstrated that plaintiff weighed around the same before her injury to present, thereby contradicting any claims that she had gained a substantial amount of weight due to her back injury [*Id.*]. The ALJ discussed Dr. Schultz's treatment note from September 2004, plaintiff's

15

initial visit for her back injury, which recorded her weight at 225 pounds [*Id.*].  The ALJ went on to discuss five subsequent treatment notes from 2008 and 2009, all demonstrating that plaintiff's weight fluctuated between 238 to 262 pounds, the latter being her weight right before her insured status expired, and that at the time Dr. Lee wrote his letter in which he opined the effects of plaintiff's self-reported 100 pound weight gain, plaintiff only weighed 245, a 20 pound difference from her weight at the time she injured her back [*Id.*].  Therefore, the ALJ found no medical evidence supporting plaintiff's allegation regarding her weight or its disabling effects [*Id.*].

The Court finds that the ALJ did not err in addressing the effects of plaintiff's obesity. With respect to step three, the Court finds that while the ALJ's discussion was brief, neither SSR 02-1p nor case law required anything further.  Moreover, the lack of further discussion "likely stems from the fact that [plaintiff] failed to present evidence of any functional limitations resulting specifically from her obesity."  *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (holding that that ALJ's acknowledgment that the claimant's obesity was a severe impairment and could "reasonably be expected to result in some degree of functional" limitations, without more, was sufficient pursuant to SSR 02-1p).  Indeed, at no time during the administrative process did plaintiff claim that her obesity was a severe impairment, nor did she claim that it exacerbated her other conditions.  In her Disability Report, plaintiff states that her impairments included a lower back injury and chronic pain [Tr. 220].  Obesity was not mentioned, nor was it added as a condition on her 2011 Appeal's Disability Report [Tr. 251].  At the hearing before the ALJ, Plaintiff's counsel cited plaintiff's back injury as the main impairment that kept her from working [Tr. 51] and the only reference to her weight was plaintiff's testimony that she had gained some weight [Tr. 39-40].  There was no mention at the

16

hearing of plaintiff's obesity as an impairment, a condition secondary to her back injury, or limiting effects caused by her weight. While Dr. Lee noted the alleged weight gain and concluded that plaintiff's inactivity could reasonably cause weight gain, there appears to be no further evidence in the record supporting a finding that plaintiff's obesity caused disabling effects. Dr. Lee's opinion, even if accepted as true, falls short of demonstrating listing level severity. Therefore, the Court finds no further discussion was warranted under step three.

The Court also finds the ALJ satisfied her burden at step four. The ALJ provided specific reasons, supported by the record, as to why she found that plaintiff's obesity did not create a more limiting effect. While plaintiff reported to Dr. Lee that she gained 100 pounds after her back injury, the record demonstrates that at the time she injured her back she weighed 225 pounds [Tr. 306], prior to plaintiff's last date insured she weighed 262 [Tr. 378], and at the time Dr. Lee opined that plaintiff's 100 pound weight gain was the result of inactivity caused by her back injury, plaintiff weighed 245 pounds [Tr. 557]. Outside of Dr. Lee reciting plaintiff's allegation of weight gain, treatment notes not only fail to substantiate significant weight gain, but they also are void of any complaints of or problems caused by plaintiff's weight. Therefore, the ALJ acted reasonable in comparing the medical records from the relevant time period and concluding that the evidence did not support plaintiff's allegation of substantial weight gain following her work-related injury.

Accordingly, the Court finds no merit in plaintiff's allegation of error.

### B. Weight Afforded to Dr. Lee's Opinions

Next, plaintiff contends that the ALJ inappropriately substituted her own opinion for that of Dr. Lee's as expressed in his questionnaires and letter [Doc. 16 pp. 8-16]. In this regard, plaintiff raises a number of specific errors committed by the ALJ in violation of the treating

17

physician rule [*Id.*]. The Commissioner presents a more generalized argument that the ALJ properly considered the opinion evidence of record pursuant to 20 C.F.R. § 404.1527, SSR 96-5p, and SSR 06-3p [Doc. 19 pp. 11-13].

In the disability determination, the ALJ deferred to Dr. Jacquemin's opinion that plaintiff was capable of performing light work and assigned "little weight" to Dr. Lee's more limiting opinion [Tr. 23, 27-28]. The ALJ found Dr. Jacquemin's specialization as an orthopedic surgeon placed him in a better position than Dr. Lee, a pain specialist, to opine on plaintiff's functional limitations [Tr. 23, 28]. In addition, the ALJ found that both physicians' treatment notes consistently demonstrated that plaintiff had normal neurological findings, full muscle strength and range of motion, and intact sensory findings, all of which supported Dr. Jacquemin's opinion of light work [Tr. 23, 27-28]. The ALJ also found that Dr. Jacquemin's two-year treating relationship with plaintiff placed him in a better position to opine on plaintiff's limitations compared with Dr. Lee who was only able to treat plaintiff for six months prior to her insured status expiring [Tr. 27-28]. Finally, the ALJ noted inconsistencies in Dr. Lee's treatment notes regarding medication compliance and side effects [Tr. 28].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of

18

the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2); *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (holding that the section 1527(c)(2) "factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight").

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. *See* 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the Administration "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive").

Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

The first error plaintiff alleges is that the ALJ improperly compared Dr. Jacquemin's opinion with Dr. Lee's opinion [Doc. 16 p. 11]. In this regard, plaintiff takes issue with the ALJ's finding that "Dr. Jacquemin's surgical credentials make his clinical findings far more reliable than those of Dr. Lee, a pain physician, and they are weighted accordingly" [Tr. 23]. Plaintiff challenges Dr. Jacquemin's credentials as a valid basis for finding his opinion more

significant or relevant than Dr. Lee's opinion [Doc. 16 p. 11]. Because Dr. Jacquemin referred plaintiff to Dr. Lee specifically for pain management after nothing more could be done from a surgical standpoint, plaintiff argues that Dr. Lee was in a better position to opine on the limiting effects of plaintiff's impairments [*Id.*]. Moreover, Dr. Lee's specialization in pain management, according to plaintiff, lends itself to "additional consideration, not less consideration per the factors outline in 20 C.F.R. § 404.1527[(c)]" [*Id.* at 11, 15].

In a battle of competing medical opinions, where both opinions are entitled to deference under the treating physician rule, the ALJ alone is tasked with deciding which opinion is entitled to greater weight. *See Isaac v. Sec'y of Health & Human Servs.*, 110 F.3d 64. at *5 (6th Cir. Apr. 3, 1997) (finding that "the ALJ was constrained to choose one or the other" in a case where treating physicians offered differing opinions); *Bandy v. Astrue*, No. 2:10-CV-00119, 2011 WL 6141037, at *7 (M.D. Tenn. Dec. 9, 2011) ("Further, the weight given to the competing opinions of multiple treating physicians is an administrative finding for which the final authority resides with the Commissioner."). As long as the ALJ's decision is supported by substantial evidence and the good reason requirement is met, the decision must stand. *See id.*

The Court finds that the ALJ did not err in affording more weight to Dr. Jacquemin due to his surgical credentials. Dr. Jacquemin's specialization as an orthopedic surgeon is a permissible factor under the regulations favoring controlling weight. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The Court notes that while plaintiff argues it was error for the ALJ to give more weight to Dr. Jacquemin's opinion due to his specialization, specialization is what plaintiff relies upon in arguing that Dr. Lee was entitled to greater weight. Both physicians specialize in

different areas of medicine, and therefore, it is not their specialty alone that entitled one to more weight over the other.

Here, the Court finds that the ALJ did not solely rely on the fact that Dr. Jacquemin performed plaintiff's surgery. Dr. Jacquemin treated plaintiff for 10 months prior to her surgery and 14 months post-operative. Consequently, Dr. Jacquemin's two year treating relationship with plaintiff placed Dr. Jacquemin in the unique position to examine, observe, and become familiar with plaintiff's condition and functional limitations both before and after her surgery. This longitudinal window of treatment surely provided some valuable insight for the ALJ to rely upon. The fact that Dr. Jacquemin reached a point in his relationship with plaintiff where he could no longer provide meaningful treatment to her as a surgeon does not mean that Dr. Jacquemin's opinion became irrelevant in offering insight into plaintiff's functional limitations. In fact, the ALJ spent a great deal comparing the medical evidence from both doctors and cited to specific evidence that contradicted Dr. Lee's opinion [Tr. 23, 27-28]. Therefore, the Court is unable to conclude that the ALJ improperly relied upon Dr. Jacquemin's surgical credentials as one factor in assessing the weight the opinion was entitled to.

The second error plaintiff alleges is that the ALJ essentially played doctor, arriving to conclusions that were unsubstantiated by the evidence and represented the ALJ's personal opinion [Doc. 16 p. 12]. Plaintiff gives several examples in support of her argument. First, the ALJ stated that "[a]fter a careful review of the evidence, the undersigned disputes Dr. Lee's opinion and gives it little weight" [Tr. 22]. Plaintiff argues that the ALJ "does not have the medical expertise or training to 'dispute' a treating physician's opinion" [Doc. 16 p. 12]. The disability determination continues with the ALJ finding that plaintiff's normal neurological findings, normal muscle strength in her lower extremities, and straight leg raises positive for

21

back pain only, demonstrated that the diminished sensation in plaintiff's right lower extremity as opined by Dr. Lee in his Listing Questionnaire "is not sufficient to warrant the degree of functional limitation [Dr. Lee] gives" [Tr. 27]. Plaintiff contends that the ALJ impermissibly arrived at this conclusion because "**no physician suggested that the diminished sensation noted by Dr. Lee in [plaintiff's] right lower extremity was not sufficient to warrant the degree of functional limitation that he assigned. [The ALJ] came up with this entirely on her own**" [Doc. 12 p. 16]. Finally, the ALJ found that the rejection of Dr. Lee's request for approval to perform a radiofrequency ablation or implant of a spinal cord by plaintiff's worker's compensation carrier "suggested they found nothing in the objective medical evidence to justify those procedures" [Tr. 26]. The ALJ's finding, according to plaintiff, is no more than "unbridled speculation" because insurance companies generally look for ways to deny expensive procedures like the ones requested by Dr. Lee [Doc. 16 p. 13].

The Commissioner responds that ALJs are "tasked with interpreting medical opinions in light of the totality of the evidence," which is what the ALJ did here [Doc. 19 p. 11 (quoting *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014))]. The Commissioner argues that the ALJ specifically referenced medical evidence that was inconsistent with Dr. Lee's opinion and therefore the ALJ was not "playing doctor" but was properly executing her role as arbiter by identifying and resolving conflicts in the record [*Id.* at 11-12].

It is well established that ALJs are not trained medical experts and therefore may not substitute their own opinions for that of a licensed medical provider, particularly a treating physician who, as a general rule, is deserving of significant deference. *See Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) (citation omitted) (holding that an "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the

22

treating physician is supported by the medical evidence"); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor." (citations omitted)). However, an ALJ is not bound by a treating physician's opinion and may discredit the opinion if it is not supported by objective evidence and the ALJ provides a reasonable basis for the rejection. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Furthermore, an ALJ may draw reasonable inferences from the evidence, but may not speculate or draw conclusions that are not supported by the record. *See Shell v. Comm'r of Soc. Sec.*, No. 3:08-CV-2946, 2010 WL 1132678, at *9 (N.D. Ohio Mar. 18, 2010) (holding "[i]t is within the ALJ's province to draw reasonable inferences from the medical evidence" (citation omitted)).

Here, the Court finds that the ALJ did not substitute her own opinion in lieu of Dr. Lee's opinion simply because the ALJ stated she "disputed" the opinion in regard to whether it demonstrated that plaintiff met or equaled the criteria of Listing 1.04A [Tr. 22]. Nor did the ALJ summarily reject Dr. Lee's opinion. Rather, the ALJ identified specific evidence that undermined the opinion, a task well within the ALJ's duty to weigh the evidence and resolve any conflicts it may present. For example, Listing 1.04A requires that a claimant be positive for straight leg raises. 20 C.F.R. § 404, Subpart P, App. 1 (1.04A). The ALJ explained that Dr. Lee found plaintiff was negative for straight leg raises, which in and of itself precluded plaintiff from meeting the listing criteria [Tr. 23]. In addition, the ALJ noted other inconsistencies in the evidence that disqualified Dr. Lee's opinion from satisfying the listing's criteria. While Dr. Lee opined plaintiff suffered from motor loss, the ALJ pointed to numerous treatment notes from both Dr. Lee and Dr. Jacquemin that documented plaintiff's muscle strength as completely normal [*Id.* (citing Exhibits 5F, 7F, 8F)]. Dr. Lee also opined decreased sensation in plaintiff's

lower right extremity, but the ALJ noted records from Dr. Lee, Dr. Schrickel, and Dr. Jacquemin that documented normal and "intact" sensory findings [*Id.* (citing Exhibits 5F, 7F, 8F)].

As to the ALJ's conclusion that the diminished sensation found by Dr. Lee was insufficient to warrant the degree of functional limitation assessed in his questionnaire, the Court likewise disagrees with plaintiff that the ALJ's finding was completely "made up." ALJs often times must draw reasonable conclusions from the evidence that are not explicit findings in the record. *See Shell*, 2010 WL 1132678, at *9. To hold otherwise would preclude ALJs from making any findings that were not first explicitly opined by a medical source. While no physician may have opined that the diminished sensation noted by Dr. Lee was insufficient to support the functional limitations Dr. Lee assessed, the ALJ was capable of making such a finding without playing doctor because she identified specific evidence in the record to support her conclusion. The ALJ noted that plaintiff's normal muscle strength, lack of sciatica, and other normal neurological findings discussed in the disability determination in regard to Listing 1.04A, were the basis for finding that the limitations opined by Dr. Lee were less than fully credible [Tr. 22, 27]. The Court finds that the ALJ's actions were permissible as an adjudicator tasked with weighing the evidence and drawing reasonable inferences.

However, the Court concurs with plaintiff that the ALJ's reliance on the worker's compensation carrier's denial of the medical procedures requested by Dr. Lee was error. In this instance, the ALJ pointed to no evidence to support her conclusion that the denial resulted from a lack of objective medical evidence justifying the requested procedures. The Court finds the ALJ's conclusion in this regard speculative. However, the Court also finds that any error in the ALJ's reasoning was harmless. The ALJ provided other good reasons, supported by the record, for discounting Dr. Lee's opinion, and this Court's foregoing discussion has found that these

24

additional reasons were appropriate. *See Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (violation of the "good reason" rule is harmless "where the Commissioner 'has met the goal of . . . the procedural safeguard of reasons'" (quoting *Wilson*, 378 F.3d at 547)).

Finally, the last error alleged by plaintiff in regard to Dr. Lee's opinion is that the ALJ failed to weigh the opinion in accordance with 20 C.F.R. § 404.1527 [Doc. 16 p. 13]. Plaintiff argues that Dr. Lee's opinion is supported by objective medical evidence, is not inconsistent with other substantial evidence, and even if the opinion were not entitled to controlling weight, the ALJ failed to give good reason for rejecting the opinion [*Id.*]. Plaintiff further argues that the factors that must be weighed when a treating physician's opinion is not given complete deference—length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion—militate in favor of giving greater weight to Dr. Lee's opinion [*Id.* at 15].

The Court finds the ALJ provided a detailed explanation, with citation to the record, for discounting Dr. Lee's opinion. The ALJ explained that Dr. Lee's and Dr. Jacquemin's treatment notes demonstrated no loss of muscle strength, no sciatica with straight leg raises, and normal to intact sensory [Tr. 27]. The ALJ found Dr. Jacquemin was more credible not only because he was an orthopedic surgeon but also because he treated plaintiff from June 2007 through her surgery in April 2008 and up until May 2009, whereas Dr. Lee only spent six months with plaintiff prior to her insured status expiring [Tr. 27-28]. The ALJ also found Dr. Lee's opinion that plaintiff experienced adverse side effects with medication inconsistent with Dr. Lee's treatment records that repeatedly noted that plaintiff suffered "no adverse effect" with

25

medication [Tr. 28].  The physical work performance evaluation by NovaCare Rehabilitation was also relied upon by the ALJ as the evaluation concluded that plaintiff was capable of light work, an opinion adopted by Dr. Jacquemin [*Id.*].  As to other opinion evidence, the ALJ discussed the opinion of the state agency physician who likewise opined physical limitations consistent with light work [*Id.*].  Accordingly, the Court finds the ALJ provided good reason for concluding that Dr. Lee's opinion was not entitled to a higher degree of deference.

That plaintiff argues that the length of treating relationship and frequency of examination factors favor Dr. Lee because plaintiff was seen by Dr. Lee 41 times between June 2009 and June 2012 [Doc. 16 p. 15].  However, plaintiff's last date insured was December 31, 2009.  Therefore, any post-dated records have little bearing on the disability determination unless plaintiff demonstrates that the post-dated evidence relates back to her condition prior to the expiration of her insured status.  *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citation omitted) (holding that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value"); *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) (citation omitted) (finding that post-dated evidence is only relevant if it "relate[s] back to the claimant's condition prior to the expiration of her date last insured").  The Court finds plaintiff fails to make such a showing.

Plaintiff also argues that Dr. Lee was the only physician to have seen or treated plaintiff from June 2009 forward, and the ALJ fails to consider that plaintiff's condition had worsened [Doc. 16 pp. 15-16].  Plaintiff, however, points to no medical evidence indicating that plaintiff's condition worsened between June 2009, when Dr. Lee began treating plaintiff, and December 31, 2009, plaintiff's last date insured.  Any treatment notes that may show a worsening condition after December 2009 do not fall into the equation.

26

Finally, plaintiff argues that Dr. Lee's specialization in pain management also lends itself to a finding of greater weight per 20 C.F.R. § 404.1527(c)(5) [Doc. 16 p. 15]. The Court recognizes that "pain is by definition a somewhat subjective matter," *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 652 (6th Cir. 2011), and therefore Dr. Lee would likely be in a superior position, as a pain specialist, to evaluate plaintiff's subjective complaints. However, the Court of Appeals for the Sixth Circuit has explained that "[s]ubjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting 42 U.S.C. § 423(d)(5)(A)). Subjective complaints of pain are evaluated as follows: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). As explained above, the ALJ weighed Dr. Lee's opinion with the other medical evidence of record, including the other opinion evidence, and found that the record did not confirm or established the severity of pain opined by Dr. Lee. Thus, Dr. Lee's specialization does not undermine the ALJ's findings.

Based upon the foregoing, the Court finds plaintiff's contentions in regard to Dr. Lee are not well taken.

## C.     Discussion of the Evidence

As a last assignment of error, plaintiff contends that the ALJ selectively discussed the evidence [Doc. 16 p. 16]. In doing so, plaintiff argues that the ALJ's credibility finding is not supported by substantial evidence, because the ALJ took certain notations from Dr. Lee's treatment notes out of context [*Id.* at 17-18]. Specifically, the ALJ found that plaintiff was

considerably more active than she conveyed in her hearing testimony, noting that plaintiff had

gone camping, took a driving trip to the Smokey Mountains, and walked around the zoo, per Dr.

Lee's treatment notes [Tr. 26]. Plaintiff argues that the ALJ took these instances of activities out

of context because a full reading of Dr. Lee's treatment notes demonstrate that with each

activity, plaintiff's pain had significantly increased and some of the activities were specifically

relayed by plaintiff to Dr. Lee as examples of how her pain intensified as her level of activity

increased [Doc. 16 pp. 17-18]. The ALJ, according plaintiff, unfairly attacked her credibility

because plaintiff was not questioned about these events during the administrative hearing [*Id.* at

18].

The Commissioner responds that the ALJ was under no obligation to question plaintiff

about each piece of evidence during the hearing or discuss every piece of evidence in the

disability determination [Doc. 19 p. 8]. Moreover, the Commissioner argues the ALJ discounted

plaintiff's credibility for a host of other reasons including, a lack of objective medical evidence

supporting her allegations, participation in other daily activities, conservative treatment

measures, inconsistent statements regarding plaintiff's search for work, lack of medication

compliance, and other opinion evidence of record, all of which is unchallenged by plaintiff [*Id.* at

8-9].

In evaluating complaints of pain, an ALJ may properly consider the credibility of the

claimant." *Walters*, 127 F.3d at 531. Our appellate court has articulated the standard for

evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in
> an underlying medical condition. If there is, we then examine (1)
> whether objective medical evidence confirms the severity of the
> alleged pain arising from the condition; or (2) whether the
> objectively established medical condition is of such a severity that

> it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (July 2, 1996); 20 C.F.R. § 1529(c)(3). Although the ALJ is not required to address every factor, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2.

Moreover, when supported by substantial evidence, the ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531.

The Court agrees with plaintiff that the ALJ's discussion of plaintiff's activities as recorded in Dr. Lee's treatment notes is misleading. While plaintiff did in fact convey that she had gone camping, took a driving trip, and walked around the zoo, plaintiff also related in each instance that she experienced pain after each activity [Tr. 436, 477, 486]. Plaintiff's complaints

of pain are absent from the ALJ's discussion and therefore the discussion is presented as though plaintiff engaged in activities without any trouble, or without as much pain as one might expect given her allegations. However, this is not a correct reading of Dr. Lee's treatment notes [*Id.*]. The fundamental question, then, is whether the ALJ's credibility finding is nonetheless supported by substantial evidence despite this error. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) ("[I]f an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012))).

In the instant case, the Court finds that the ALJ's error was harmless. The ALJ's discussion was lengthy and cited to numerous other reasons that warranted a finding that plaintiff's disabling complaints were not fully credible. First, the ALJ noted that plaintiff testified that her back and leg pain were worse after her surgery and that she had reported this fact to Dr. Jacquemin [Tr. 25]. The ALJ found, however, that Dr. Jacquemin's treatment notes were void of such complaints [*Id.*]. The ALJ also reasoned that if plaintiff's pain was as severe as she claimed, "it is difficult to believe Dr. Lee would not have referred her for a surgical consult, given the possibility that the fusion instrumentation was no longer intact" [*Id.*].

Second, the ALJ found troublesome plaintiff's statements to Dr. Jacquemin about looking for work [*Id.*]. The ALJ recited Dr. Jacquemin's treatment note in which plaintiff reported she was looking for work with the restrictions he had been assessed but told Dr. Lee the following month that she could not work due to the same job restrictions [*Id.*]. Plaintiff admitted during the hearing that she never actually looked for work but only gave the impression that she was on

the advice of counsel handling her worker's compensation claim in an effort to bolster her claim settlement [*Id.*].

Next, the ALJ noted some inconsistency with plaintiff taking her medication as prescribed and the results she experienced [*Id.*]. While plaintiff testified she was worried about becoming addicted to pain medication and that her Vicodin had lost its effectiveness, the ALJ pointed to Dr. Lee's treatment notes which documented that plaintiff had no serious side effects from her pain medicine and that she had been using Vicodin for three years leading up to her date last issued and that the medicine still helped and did not produce side effects [*Id.*]. The ALJ also explained that plaintiff experienced a substantial amount of pain relief following steroid injunctions and acupuncture treatments from Dr. Lee and plaintiff was able to perform some housework and exercise regularly as encouraged by Dr. Lee [Tr. 26].

Finally, the ALJ addressed plaintiff's allegation that she had gained 100 pounds as the result of her back injury [Tr. 26]. As explained above in greater detail, the ALJ found no evidence in the record of such substantial weight gain and cited to medical records that ranged from 2004, the year of her injury, to the most current record from 2013, which reflected only a 20 pound difference in weight [*Id.*]. Moreover, the ALJ noted the lack of a walking assistive device and Dr. Lee's encouragement that plaintiff walk at the grocery store instead of utilizing a motorized scooter as evidence demonstrating that any hardships caused by plaintiff's weight was due to being deconditioned rather than disabling back pain [Tr. 26-27].

Given the ALJ's compressive discussion of plaintiff's credibility, the Court finds that the ALJ's error does not warrant a remand in this case. Because the ALJ articulated additional reasons for finding plaintiff less than fully credible, the Court finds that substantial evidence supports the ALJ's credibility determination.

Accordingly, the Court finds plaintiff's allegation of error is not well taken.

## VII.  CONCLUSION

For these reasons, plaintiff's Motion for Summary Judgment [Doc. 15] will be **DENIED,** and the Commissioner's Motion for Summary Judgment [Doc. 18] will be **GRANTED**.  The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE